**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JIMMY SHANE CANTRELL
ADC #98730                                                                                                       PLAINTIFF

V.                                   NO: 5:05CV00169 JLH/HDY

M.D. REED *et al.*                                                                                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

      1.      Why the record made before the Magistrate Judge is inadequate.

      2.      Why the evidence proffered at the hearing before the District
             Judge (if such a hearing is granted) was not offered at the
             hearing before the Magistrate Judge.

      3.      The detail of any testimony desired to be introduced at the
             hearing before the District Judge in the form of an offer of

>proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff Jimmy Shane Cantrell, an inmate at the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"), filed a *pro se* complaint, pursuant to 42 U.S.C. § 1983, on June 6, 2005.

On March 28, 2011, Defendants filed a motion for summary judgment, a brief in support, and a statement of facts (docket entries #170-#172). On May 5, 2011, Plaintiff's attorney at the time filed a response to the motion, a brief in support, and a response to the statement of facts (docket entries #183-#185). At Plaintiff's request, that attorney's representation was terminated, Plaintiff was allowed to proceed *pro se*, and he was granted additional time to file any further response to the motion (docket entry #186). Plaintiff has filed no further response, although he has requested another extension of time and appointment of new counsel (docket entries #201 & #204).[1]

---

[1] Counsel was originally appointed to allow Plaintiff an opportunity to present documentary evidence such as training policies, move slips, and documents pertaining to cell assignments involving inmates, which was originally not provided because of security concerns (docket entry #149). Counsel had an opportunity to review the documents but did not cite any in his response to Defendants' motion.

## I. Standard of review

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322-23. The Eighth Circuit has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II. Analysis

Plaintiff has named six individual Defendants: former ADC Director Larry Norris, and Warden M.D. Reed, Assistant Warden Kim Luckett, Classification Officer Crystal Wood, Captain Jesse Davis, and Gloria Oates, all of the Cummins Unit. Plaintiff has also identified John Does, who may have been responsible for training and supervision at the Cummins Unit.

Plaintiff was a protective custody inmate at the Cummins Unit on May 21, 2003, when he was assigned to punitive status. A non-protective custody, or "population," inmate named Richard Dolan was improperly placed into a cell with him. Dolan's transfer into the cell was approved by either Davis or Oates (docket entry #185, page #20). The first day the two men were housed

together, there was no incident. However, Plaintiff discovered Dolan's population status, and filed a grievance, requesting that the two men be separated. Thereafter, guards came to the cell to inform the men that one of them would be moved. As Plaintiff lobbied to have Dolan moved rather than himself, Dolan interrupted Plaintiff, who told Dolan to stay out of the conversation. Dolan then assaulted Plaintiff, who sustained some bumps and bruises, but otherwise had no significant medical needs (docket entry #44-2, page #20).

Plaintiff claims that Oates and Davis violated his Eighth and Fourteenth Amendment rights by placing him into a cell with a population inmate, who had assaulted another inmate, and that prison supervisors failed to train subordinates, or adopt policies, to prevent such an occurrence. Plaintiff further asserts that his assignment to administrative segregation, which was to begin upon completion of his punitive term, violated his Eighth and Fourteenth Amendment rights, in that it deprived him of protective custody status, and he could have been attacked again.[2] Finally, Plaintiff alleges that he was transferred to another prison unit in retaliation for his grievances regarding the attack and administrative segregation assignment.

Defendants contend that Plaintiff has failed to establish a claim against Defendants for failure to protect him from Dolan's attack, that he cannot prevail on a claim for emotional injuries with respect to his assignment to administrative segregation, that Plaintiff cannot establish that Defendants failed to establish an adequate training program, that Plaintiff failed to demonstrate his transfer was retaliatory, that Plaintiff cannot prevail on his supervisor liability claims, and that they are entitled to sovereign and qualified immunity.

---

[2] Plaintiff was never actually placed into administrative segregation, as he was transferred before his punitive term expired (docket entry #142-2, page #17).

Plaintiff does not allege that Dolan's attack was expected, or even that Dolan was on his enemy alert list, but rather, that Oates or Davis should have known that they were knowingly disregarding an excessive risk to Plaintiff's safety by virtue of Dolan's population status. In *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), the Court held that, in order for a prisoner to recover against prison officials for failing to protect him, he must prove that: (1) "he [was] incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official was deliberately indifferent to that substantial risk of serious harm. In defining deliberate indifference, the Court, in *Farmer,* explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*.

*Id.* at 837 (emphasis added). Additionally, the Eighth Circuit has explained that this rigorous standard of proof is appropriate because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (*citing Wilson v. Seiter,* 501 U.S. 294, 297 (1991)).

Even if it is assumed that Plaintiff was incarcerated in a manner posing a substantial risk of serious harm, he has provided no facts to demonstrate deliberate indifference. No evidence has been identified to suggest that any Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that they drew such inference. At most, Plaintiff can argue that housing him with an inmate having a different security classification would permit the fact finder to draw such an inference, but the Court believes this is too speculative. More is required to establish that a defendant acted with deliberate indifference toward his right to be free

from serious harm. In this case, the strongest indicator of the intent of the correctional officials and their desire to avoid this sort of situation was there quick response when notified of the potential housing error. Once Plaintiff alerted authorities to the fact that he was housed with a population inmate, a violation of policy (docket entry #170, exhibits #3-#5), guards came to the cell to move one of the men within 30 to 45 minutes. While Dolan's move to Plaintiff's cell may have violated prison policy, the quick reaction after Plaintiff's grievance does not demonstrate deliberate indifference. Any prison policy which was violated by Plaintiff's housing assignment is not itself a constitutional violation. *See Gardner v. Howard*, 109 F. 3d 427, 430 (8th Cir. 1997)(no § 1983 liability for violation of prison policy). Policy was in place to prevent this assignment error and when Defendants became aware of the policy violation prompt action was taken to eliminate any risk of harm. The original assignment error could be described as nothing more than negligence on the part of the Defendants having any knowledge of the assignment. Negligence, however, is insufficient to establish an Eighth Amendment violation. *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir.1997), quoting *Stephens v. Johnson*, 83 F.3d 198, 201 (8th Cir. 1996).

  Plaintiff also claims that he was placed at risk for another attack when he was assigned to administrative segregation to begin upon completion of his punitive term. Plaintiff contends that this amounted to an involuntary revocation of his protective custody status, and *could* have led to another attack. According to Plaintiff's original complaint, he was transferred soon after he filed a grievance on the issue, which "shortened the emotional injury," and "prevented any physical injury." Plaintiff's own complaint demonstrates that he had no physical injury as a result of his assignment to administrative segregation, and his testimony at an earlier hearing in this matter was that he was transferred before he actually moved into administrative segregation. Without a physical

injury, Plaintiff may not recover compensatory damages for the emotional injuries. *See* 42 U.S.C. § 1997e(e) (no federal civil action may be brought by prisoner for emotional injury without showing of physical injury). Pursuant to *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), Plaintiff could be awarded nominal and punitive damages under § 1997e(e), however such damages could only be awarded if in fact there had been a constitutional violation. Plaintiff's assignment to, without serving time in, administrative segregation, simply does not amount to such a violation.

Finally, Plaintiff claims he was transferred to the Tucker Unit in retaliation for his grievances. According to Wood, Plaintiff was transferred to fill available bed space (docket entry #170-8, page #2). Plaintiff has advanced various possible reasons prison officials might have for wanting to retaliate against him in the form of a unit transfer. In his original complaint, Plaintiff claimed that he filed a grievance complaining that his protective custody status was taken when he was assigned to administrative segregation, which was to begin upon completion of his punitive term. At the time of Plaintiff's original complaint, Plaintiff asserted that the transfer, which occurred soon after he filed the grievance, "shortened the emotional injury, and prevented any physical injury" (docket entry #2, page #3). In his amended complaint, Plaintiff claimed he was transferred in retaliation for a grievance regarding being housed with and attacked by Dolan, and a grievance regarding his future assignment to administrative segregation, where he would be housed with population inmates (docket entry #98). That was apparently Plaintiff's theory in his second and third amended complaints (docket entry #158, pages #4-#5; docket entry #163, pages #4-#5), and at his pre-jury evidentiary hearing (docket entry #142-2, page #9). Thus, the transfer, which originally was credited as having shortened an emotional injury and preventing any physical injury, was later cited as unconstitutional retaliation. In his response to Defendants' statement of

facts, Plaintiff indicates that his transfer was orchestrated by Wood in retaliation for a "memo/grievance" he wrote (document #185, pages #4, #70-#72, #75) complaining he was improperly assigned to field duty.[3] Subsequently, Plaintiff returned to his allegation that his grievance regarding his future administrative segregation was the best basis for retaliation, because it was answered the day before his transfer (docket entry #197, page #3).[4] The fact that Plaintiff's transfer came soon after a grievance was answered does not itself demonstrate retaliation for the grievance. *See Dasta v. Shearin*, No. 04-4475 (MJD/RLE), 2007 WL 4952768, at *23 (D.Minn. Nov. 15, 2007) (concluding that temporal proximity without more was insufficient evidence of retaliatory motive to survive summary judgment on a claim that prison officials engaged in retaliatory discipline by searching an inmate's cell not long after he filed certain grievances).[5] There is no evidence that any Defendant suffered any adverse consequences as a result of Plaintiff's grievances, or that the grievances filed by Plaintiff were any different than the numerous grievances regularly filed by inmates. Plaintiff's changing characterization of the transfer, and his evolving theories regarding the basis for his transfer, are insufficient for him to meet his burden to prove that his transfer would not have occurred in the absence of protected activities, and are nothing more than

---

[3]Plaintiff's memo to Wood was received in the grievance office on June 30, 2003, and his transfer was approved by Wood on August 26, 2003.

[4]*See* docket entry #141, page #37.

[5]The grievances Plaintiff has cited as being a basis for retaliation were filed over a period of several months in 2003. The grievance complaining of Dolan's cell placement, CU-03-3046, was originally received May 22, 2003, and the grievance regarding his field duty assignment, CU-03-3799, was originally received on June 30, 2003 (docket entry #170-9). The grievance regarding housing protective custody inmates with population inmates, which was answered on August 25, 2003, the day before his transfer, was originally received on August 18, 2003 (docket entry #141, page #35).

mere speculation. Allowing Plaintiff to proceed with his retaliation claim would require the Court to in essence conclude that any otherwise proper action taken by prison officials would be an actionable constitutional claim, if the action was taken subsequent to the filing of a grievance or other protected activities. Plaintiff cannot meet his burden with such a theory. *See Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996) (inmate claiming retaliation is required to prove actual motivating factor for adverse action was as alleged). Even at summary judgment, the burden is on the prisoner to prove that but for an unconstitutional retaliatory motive, the transfer would not have occurred. *Id. See also Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (allegations of retaliation must be more than speculative and conclusory).

The undersigned notes that Plaintiff has sought appointment of counsel and an extension of time to respond to Defendants' motion largely because he seeks to identify other prison officials, and possible documents, which would demonstrate a failure to train personnel and establish policies to prevent constitutional violations (docket entry #201). "[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996) (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994), cert. denied, 514 U.S. 1004 (1995)). However, there is no evidence in this case that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, or of any deliberate indifference by prison officials, in connection with his housing assignment. There was no violation in his assignment to segregation or in his subsequent transfer to another unit. Without a deprivation of constitutional rights, the failure to train staff members or to adopt appropriate prison policies cannot serve as the basis for the imposition of Section 1983 liability upon

9

supervisors.[6] Thus, there is no reason to delay resolution of Defendant's motion. Because no material facts are in dispute, and Plaintiff cannot demonstrate a constitutional violation in his housing assignment, his unserved administrative segregation time, or his unit transfer, Defendants' motion for summary judgment should be granted.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (docket entry #170) be GRANTED, and Plaintiff's complaint be DISMISSED WITH PREJUDICE.

2. All pending motions be DENIED AS MOOT.

DATED this __1__ day of August, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6]Even if Plaintiff established a constitutional violation, he failed to produce any evidence to establish the elements required to impose liability on a supervisor for failure to train or supervise a subordinate, as set forth in *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).